O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHELLE HUNT,                    )    NO. EDCV 08-00299-MAN
                                  )
              Plaintiff,          )
                                  )    MEMORANDUM OPINION
       v.                         )
                                  )    AND ORDER
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
              Defendant.          )
_____)

       Plaintiff filed a Complaint on March 5, 2008, seeking review of the
denial by the Social Security Commissioner ("Commissioner") of
plaintiff's applications for a period of disability ("POD") and
disability insurance benefits ("DIB").  On March 24, 2008, the parties
consented to proceed before the undersigned United States Magistrate
Judge pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint
Stipulation on January 16, 2009, in which: plaintiff seeks an order
reversing the Commissioner's decision and remanding for the payment of
benefits or correction of legal errors; and defendant seeks an order
affirming the Commissioner's decision.  The Court has taken the parties'
Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 28, 2002, plaintiff protectively filed an application for a POD and DIB, alleging an inability to work beginning April 14, 2000, due to reflex sympathetic dystrophy of the right upper and lower extremity, low blood pressure, and right eye visual impairment. (Administrative Record ("A.R.") 67-70.)  The Social Security Administration ("SSA") denied the applications initially on January 3, 2003, and upon reconsideration on May 9, 2003. (A.R. 32-35, 38-41.)  Plaintiff sought review before an Administrative Law Judge ("ALJ"). (A.R. 41A.)

On March 4, 2004, a hearing was conducted before ALJ Jay E. Levine. (A.R. 545-70.)  Plaintiff, who was represented by counsel, appeared and testified at the hearing. (A.R. 24.) The ALJ denied plaintiff's claim on the following grounds:  plaintiff was insured for benefits through, but not after, September 30, 2003; plaintiff has not engaged in substantial gainful activity since her alleged April 14, 2000 onset date of disability; plaintiff's allegations regarding her limitations are not totally credible; plaintiff's medically determinable impairments do not prevent her from performing her past relevant work; and plaintiff was not under a "disability," as defined by the Social Security Act, at any time through September 30, 2003. (A.R. 28-29.)

Plaintiff sought review by the Appeals Council. (A.R. 19-20.) Her request for review was denied.  (A.R. 3-6.)  Plaintiff then sought relief before this Court.  (A.R. 616-19.)  Upon stipulation of the parties, the Court reversed and remanded the matter on January 30, 2006. (A.R. 616-19.)  On remand, the ALJ was directed to perform the following

2

tasks: further address the medical evidence of record and provide a rationale for the weight given said evidence; further evaluate plaintiff's alleged mental impairment; further evaluate the side effects of plaintiff's medication; and re-evaluate plaintiff's ability to perform her past relevant work. (A.R. 590.)

On March 6, 2006, the Appeals Council vacated the prior decision, and directed the ALJ to make the following specific findings: address the opinions of David Doty, M.D., and Stuart Kuschner, M.D.; consider new evidence regarding plaintiff's mental impairment; and address plaintiff's complaints of drowsiness and memory loss, and the cognitive side effects from Topamax noted by one of plaintiff's treating physicians. (A.R. 590.) On February 13, 2007, plaintiff, represented by counsel, once more appeared and testified at a hearing before ALJ Levine. (A.R. 703-66.) On March 2, 2007, the ALJ issued a decision denying the claim, after finding that plaintiff's testimony regarding her symptoms was not entirely credible. (A.R. 590-99.) Plaintiff sought review, and the Appeals Council denied the request for review. (A.R. 571-75, 585-87.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff was not disabled, as defined in the Social Security Act, at any time from April 14, 2000, the alleged onset date of her disability, through September 30, 2003, her last insured date. (A.R. 599.)

The ALJ determined that, as of September 30, 2003, plaintiff had

3

the following impairments which, in combination, are "severe":  (1) reflex sympathetic dystrophy; (2) chronic cervical spine muscle strain with degenerative cervical disease; (3) moderate obesity; and (4) depressive and cognitive disorders not otherwise specified.  (A.R. 593.) The ALJ found that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms prior to September 30, 2003, were not entirely credible.  (A.R. 596.)

The ALJ ultimately concluded that plaintiff could not perform her past relevant work as a medical receptionist and retail clerk.  (A.R. 598.)  However, the ALJ found that plaintiff retained the residual functional capacity for a reduced range of light work.  (A.R. 594.)  The ALJ further found that plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy based on her age, education, work experience, and residual functional capacity.  (A.R. 599.)  Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act during the time period at issue.  (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  <u>Connett v.</u>

4

_Barnhart_, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  _Widmark v. Barnhart_, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." _Desrosiers v. Sec'y of Health and Human Servs._, 846 F.2d 573, 576 (9th Cir. 1988); _see also_ _Jones v. Heckler_, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." _Andrews v. Shalala_, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when evidence is susceptible to more than one rational interpretation.  _Burch v. Barnhart_, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." _Orn_, 495 F.3d at 630; _see also_ _Connett_, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" _Robbins v. Soc. Sec. Admin._, 466 F.3d 880, 885 (9th Cir. 2006)(_quoting_ _Stout v. Comm'r_, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); _see also_ _Burch_, 400 F.3d at 679.

5

**DISCUSSION**

Plaintiff alleges a single issue:  whether the ALJ properly considered plaintiff's subjective pain testimony.  (Joint Stip. ("J.S.") at 5.)

**I.    The ALJ Failed To Provide The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony.**

Plaintiff contends that the ALJ improperly assessed her subjective symptom testimony in determining her residual functional capacity. (J.S. at 5.)  For the reasons set forth below, the Court agrees.

The law is well-settled that, once a disability claimant produces evidence of an underlying physical impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 2001)(en banc); see also 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's subjective symptom testimony must be "clear and convincing."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996).

This rule is based upon the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  Bunnell, 947 F.2d at 347.

The ALJ must first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce some pain or other symptom. Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ must then evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. Id. A claimant's assertions as to subjective symptoms, such as pain, need not be accepted uncritically; the ALJ may reject the claimant's testimony for lack of credibility if specific, properly supported reasons and findings are stated to justify that rejection. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994); Bunnell, 947 F.2d at 345-46.

The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. Further, "[i]t is not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Lester, 81 F.3d at 834 ("the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints"); Smolen, 80 F.3d at 1283-84 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

In this case, the ALJ cited four reasons for his adverse credibility finding, which led to his conclusion that plaintiff has the

residual functional capacity to perform a reduced range of light work.
(A.R. 594.)  First, the ALJ found that the "medical evidence of record
does not reflect objective findings that support the severity of
[plaintiff's] subjective complaints."  (A.R. 596.)  Second, the ALJ
stated that plaintiff's subjective pain complaints are inconsistent with
her ability to perform simple daily activities, such as fine finger
manipulations.  (*Id.*)  Third, the ALJ determined that plaintiff's
conservative medical treatment was inconsistent with her assertions of
disabling pain.  (A.R. 597.)  Fourth, the ALJ relied on the fact that
plaintiff had a weak earnings record, prior to filing her disability
claim, in concluding that she is not motivated to seek employment.
(*Id.*)

A. **Plaintiff's Subjective Complaints Of Pain Cannot Be
Rejected Based On A Lack Of Objective Medical Evidence To
Support Her Alleged Degree Of Pain.**

It is well-settled that an ALJ may not discredit a claimant's
subjective claims of disabling pain for the sole reason that the alleged
degree of pain is not fully supported by objective medical evidence.
*See* Fair v. Bowen, 885 F.2d 597, 601-02 (9th Cir. 1989); Stewart v.
Sullivan, 881 F.2d 740, 743-44 (9th Cir. 1989).  Indeed, as stated in
Cotton v. Bowen, 799 F.3d 1403, 1407 (9th Cir. 1986), excess pain, by
definition, is "pain that is not supported by objective medical
findings."  The *Bunnell* standard requires consideration of "excess
pain," not simply the degree of pain or limitation(s) established by the
objective medical evidence.  Bunnell, 947 F.2d at 345.

8

In this case, plaintiff's primary complaint is reflex sympathetic dystrophy ("RSD"), also known as complex regional pain syndrome (CRPS) Type 1.  Social Security Ruling ("SSR") 03-2p.  The key symptom of RSD is a "continuous, intense pain out of proportion to the severity of the injury, which becomes worse rather than better over time."  National Institutes of Health, National Institute of Neurological Disorders and Stroke Complex Regional Pain Syndrome Information Page <http://www.ninds.nih.gov/disorders/ reflex_sympathetic_dystrophy>. The pathogenesis of RSD/CRPS is not entirely understood, and it is not a Listed Impairment under the Regulations.  However, the SSA has recognized the difficulty associated with diagnosing and treating RSD/CRPS and issued a Ruling, SSR 03-2p, to explain its policies for developing and evaluating disability claims based on RSD.  Brooks v. Barnhart, 428 F. Supp. 2d 1189, 1192 (N.D. Ala. 2006).[1]

Critically, as the medical authorities and SSR 03-2p recognize, RSD/CRPS is a disease for which objective findings can be minimal.[2]

---

[1]    According to SSR 03-2p, the diagnostic requirements for RSD/CRPS consist of "persistent, intense pain that results in impaired mobility of the affected region," such as "swelling; autonomic instability - seen as changes in skin color or texture, changes in sweating, skin temperature changes, or abnormal pilomotor erection (gooseflesh); abnormal hair or nail growth; osteoporosis; or involuntary movements of the affected region of the initial injury." SSR 03-2p.  Reported pain at the site of the injury may "be followed by complaints of muscle pain, joint stiffness, restricted mobility." Id.  The Ruling recognizes that a pattern of symptoms may not be entirely consistent, as "transient findings are characteristic of RSD/CRPS, and do not affect a finding that a medically determinable impairment is present."  SSR 03-2p. Indeed, "at the present time, there is no diagnostic test that is specific for [RSD/]CRPS." SSR 03-2p.

[2]    Samuel D. Hodge, Jr., Jack E. Hubbard & Katherine Armstrong, Complex Regional Pain Syndrome – Why the Controversy? A Medical/Legal Overview, 13 Mich. St. U. J. Med. & L. 1, 13 (Winter 2009).

Thus, the proper evaluation of plaintiff's subjective pain testimony is crucial.   Where the ALJ fails to make detailed findings regarding certain aspects of alleged subjective pain symptoms, remand is appropriate.   *See* <u>Ferstl v. Barnhart</u>, 360 F. Supp. 2d 1181, 1193 (D. Kan. 2005)(The ALJ should make detailed findings regarding the level of pain medication, the effectiveness of the medications, the side effects, and the frequency of . . . medical contacts.").

In the instant case, the ALJ concluded that the objective medical findings did not support the severity of plaintiff's symptoms, because "the treating source records either reflect no findings or vague nonanatomic findings." (A.R. 596.)   As noted above, RSD/CRPS is a disease diagnosed primarily based on subjective complaints, and the absence of "objective medical evidence," such as x-rays or laboratory tests, cannot be cited as a legitimate basis for rejecting plaintiff's subjective pain and limitations testimony.   In any event, the ALJ's conclusion -- that the treating source records reflect "no findings" associated with plaintiff's RSD/CRPS diagnosis -- mischaracterizes the record, because at least two of plaintiff's treating physicians found that plaintiff suffered from RSD/CRPS and would benefit from further treatment. (A.R. 370.)

In January 2001, plaintiff began treating with Rebecca J. Patchin, M.D., a spine specialist, for pain management in plaintiff's right upper extremity.[3]   (A.R. 192-246.)   Plaintiff's treatment with Dr. Patchin

---

[3]   Plaintiff's first visit to Dr. Patchin was on June 16, 2000, for a comprehensive pain management evaluation of plaintiff's right upper extremity.   (A.R. 431.)   Plaintiff treated regularly with Dr. Patchin

1  included a series of right stellate ganglion blocks,[4] occipital

2  injections, and cortisone shot injections. (*Id.*) Dr. Patchin diagnosed

3  plaintiff with, *inter alia*, CRPS, right upper extremity with sympathetic

4  dependent pain, and reflex sympathetic dystrophy of the right upper

5  extremity. (A.R. 192, 194, 196, 198, 200-02, 206, 208, 219, 232.)  In

6  an April 7, 2006 Physical Residual Functional Capacity Questionnaire,

7  Dr. Patchin again diagnosed plaintiff with CRPS and opined that

8  plaintiff's prognosis is "guarded."

9

10       On July 26, 2001, and January 15, 2002, plaintiff was seen by

11 Stuart H. Kuschner, M.D., a surgeon.   (A.R. 346-61.)   Dr. Kuschner

12 determined that plaintiff has a diminished range of motion in the right

13 shoulder and slightly diminished grip strength on the right side, and

14 that her condition is "permanent and stationary." (A.R. 360.)  Although

15 Dr. Kuschner did not specifically diagnose plaintiff with RSD/CRPS, he

16 did not dispute the previous diagnosis; in fact, he adopted it in his

17 working diagnosis.[5] (*Id.*) Dr. Kuschner's prophylactic work restrictions

18 include no overhead work using the right upper extremity and "no

19 repetitive or sustained forceful pushing, pulling, grasping, or torquing

20 using the right hand on a more than frequent basis."  (*Id.*)

21

22 from January 12, 2001, through at least May 2005.  (A.R. 426-470, 593.)

23 [4]    The stellate ganglion is an aggregation of nerve cells in the neck.

24 STEDMAN'S MEDICAL DICTIONARY, at 785, 787, 351 (28th ed. 2006).  A stellate
   ganglion block involves "regional anesthesia produced by blocking of the

25 stellate (cervicothoracic) ganglion," which inhibits nerve impulse
   transmission.   DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, at 229 (30th ed.

26 2003).

27 [5]    Dr. Kuschner's working diagnosis noted plaintiff "has subjective
   complaints of pain involving the right upper extremity and has been

28 diagnosed as having complex regional pain syndrome involving the right
   upper extremity." (A.R. 360.)

On March 12, 2002, David Doty, M.D., Diplomate on the American Board of Orthopedic Surgeons and plaintiff's primary treating physician, diagnosed plaintiff with the following:  (1) chronic cervical overuse syndrome; (2) frozen right shoulder secondary to overuse; (3) right carpel tunnel syndrome; and (4) Type II CRPS, right shoulder and upper extremity.  (A.R. 370.)  Dr. Doty's work restrictions included "no repetitive motions of the neck" and no "fixed positioning for more than 15 minutes at a time."  (A.R. 371.)  Dr. Doty found the following "objective factors of disability":  reduced range of motion, cervical spine; marked sensitivity, neck; reduced range of motion, right shoulder; painful arc, right shoulder; positive impingement sign, right shoulder; positive Phalen's test over right median and ulnar nerve; positive Tinel's sign,[6] right; and reduced grip strength, right major hand.  (*Id.*)  Dr. Doty opined that plaintiff would benefit from further treatment in the form of medication and physical therapy modalities.  (A.R. 361, 372.)  In a June 11, 2002 Treating Physician's Supplemental Report, Dr. Doty opined that "not only does [plaintiff] have a frozen shoulder and carpal tunnel syndrome on the right, but a Complex II Regional Pain Syndrome involving the right shoulder and upper extremity."  (A.R. 364.)

As another basis for rejecting plaintiff's subjective pain testimony, the ALJ relied on the medical assessment of Samuel Landau, M.D., the medical expert at the hearing on remand, to support the ALJ's conclusion that plaintiff's subjective complaints are out of proportion

---

[6]   Tinel's sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of a nerve." DORLAND'S, at 1703.

to the objective medical evidence of record.  (A.R. 598.)  However, at the hearing, Dr. Landau clearly acknowledged in his testimony that "objective findings can be minimal" in connection with a diagnosis of RSD, and the nature of the RSD as an ailment is difficult to identify from a medical standpoint.  (A.R. 708-11.)  Thus, the ALJ's reliance on Dr. Landau's opinion does not provide a legitimate basis for rejecting plaintiff's subjective pain testimony.

As a general matter, subjective pain is difficult to prove by objective medical evidence; this is particularly true in RSD/CRPS cases in which a diagnosis necessarily hinges on a plaintiff's subjective symptoms.  Accordingly, the ALJ's reliance on an absence of objective medical findings as a basis to discredit plaintiff's subjective pain testimony is unconvincing.

**B.**   **Plaintiff's Daily Activities Are Not Inconsistent With Her Assertion Of Pain**.

The ALJ's second reason for rejecting plaintiff's credibility -- that her daily activities are inconsistent with her assertions of subjective pain -- is not convincing.  In support of this conclusion, the ALJ cites plaintiff's ability to "perform prolonged fine finger manipulations in terms of handwriting by completing the [SSA] forms" and "to drive as needed through the date last insured and for a year or more after that."  (A.R. 596-97.)

With respect to the fine finger manipulations, the ALJ made no effort to demonstrate how plaintiff's ability to fill out 33 pages of

13

forms on a one-time basis translates into the ability to engage in full-time work.  *See* Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)(daily activities may not be relied on to support an adverse credibility decision where those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis); *cf.* Fair, 885 F.2d at 602 ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.").  Notably, six of the 33 pages did not contain any handwriting at all.  (A.R. 93-96, 107.) Further, although the ALJ relied on plaintiff's ability to fill out the forms to discredit her subjective pain testimony, he failed to ask how much time it took her to fill out the forms, over what period of time she completed them, and whether or not she was in pain while she filled out the forms.  (A.R. 596.)

Regarding plaintiff's ability to drive for a period of time after her date last insured, September 30, 2003, (A.R. 597), at the hearing on February 13, 2007, plaintiff testified that, as of that date, she could no longer drive, could not cook, could not clean her home, and laid in bed for most of the day.  (A.R. 731-35.)

There is no basis for finding that the simple daily activities cited by the ALJ are easily transferable to the more grueling environment of the workplace, much less that they are inconsistent with and/or negate plaintiff's assertions as to her subjective symptoms flowing from her objectively determined physical impairments.  *See*

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(only if the level of activity was inconsistent with claimant's claimed limitations would the activity have any bearing on claimant's credibility); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)(disability claimant need not "vegetate in dark room" to be deemed eligible for benefits).

Neither plaintiff's ability to fill out forms nor her ability to drive for a period of time following the alleged onset date of her disability provide a legitimate basis for rejecting plaintiff's excess pain testimony.

**C.   Plaintiff's Conservative Medical Treatment**

The third reason given by the ALJ for rejecting plaintiff's subjective pain testimony is that "her medical treatment has been fairly conservative, consisting of acupuncture, physical therapy and medication, despite the complaints of side effects," and she has failed to seek more intensive treatment, such as stellate nerve blocks and a spinal cord simulator.  (A.R. 597.)

A diverse range of treatment options is available for RSD/CRPS, because many factors may be the root cause of the pain and the disorder itself is not well understood.   Hodge, CRPS - Why the Controversy?, supra at 15.  SSR 03-2p explains that the most important treatment for RSD/CRPS is patient education and activity programs designed to increase limb mobility and promote the use of the affected region.  The Ruling states "in some patients, it is necessary to inject a long-acting anesthetic to block sympathetic activity and reduce pain to allow the

15

individual to increase the mobility of the affected region." SSR 03-2p.

Pharmacologic treatment is recognized as the starting point for controlling the pain of RSD/CRPS, including "pain killer" analgesics comprised of narcotic (*e.g.,* hydrocodone, oxycodone) as well as non-narcotic (*e.g.,* gabapentin, oxacarbazepine) medications to help reduce different types of neuropathic pain. Hodge, <u>CRPS- Why the Controversy,</u> *supra*, at 15. Antidepressants are beneficial not only for treatment of depression, which invariably accompanies chronic pain syndrome, but also may have direct pain relieving ability. *Id.* at 16-17.

The ALJ states that plaintiff's failure to obtain spinal cord simulator treatment, presumably because plaintiff could not afford it, is significant, because there is no indication in the record that she sought such treatment through her primary care provider, Kaiser Permanante. (A.R. 597.) As there is no evidence whatsoever cited by either party in the Joint Stipulation as to whether or not plaintiff sought to obtain a spinal cord simulator, it would be improper to draw a negative inference on this point. Plaintiff did participate in the "most important" treatment option highlighted by the Ruling, namely, physical therapy and acupuncture, activities "designed to increase the mobility of the limbs." (A.R. 597.) In addition, and critically, plaintiff received more aggressive treatment than that noted by the ALJ. Indeed, throughout 2001, Dr. Patchin performed approximately eight stellate ganglion blocks in plaintiff's neck, occipital injections, and six cortisone shot injections into the right shoulder. (A.R. 192-247.) The ALJ's mischaracterization of the record in this respect was error. *See* <u>Reddick</u>, 157 F.3d at 722-23.

The ALJ's reliance on plaintiff's statements that she wanted to accept her limitations rather than to seek treatment for her mental depression is error as well, because it mischaracterizes her testimony. At the hearing, plaintiff stated that she was taking Cymbalta. (A.R. 720.)   Plaintiff explained that she had tried taking other antidepressants, but they did not work well for her. (*Id.*)   Plaintiff's statement that she likes to "work through things naturally" (A.R. 721) merely demonstrates a preference.   It does not prove that she refuses to seek medical treatment, or that she has been remiss in taking prescribed medicine.   In fact, plaintiff seems to have tried myriad pharmacologic options to combat her RSD, as over the course of her treatment, she has been prescribed Topamax, Zanaflex, Bextra, Darvocet, Mobic, Celebrex, Flexeril, Ultram, Ultracet, Elavil, and Procaria XL.   (A.R. 429, 436, 438-439, 459.)

Reviewing the record as a whole, the ALJ's conclusion -- that plaintiff's allegedly conservative medical treatment provides a basis for discounting her subjective pain testimony -- is not well-founded.

D. __Plaintiff's Earning Record__

The fourth, and final, reason given by the ALJ to support his rejection of plaintiff's subjective pain testimony, and his related finding that plaintiff can work in a reduced, but not extremely limited, manner, is that her earnings record reflects only four years of regular full-time work immediately before the onset of her medical problems in 1999. (A.R. 597.)   The ALJ concludes that, prior to 1996, "she had no significant attachment to the workforce," and thus, plaintiff was not

1   motivated to seek work.   (*Id.*)

2

3       Although it may be true that plaintiff only worked for four years
4   before the onset of her medical problems, work history is just one of
5   many factors the ALJ may take into account when weighing subjective pain
6   testimony.   <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).
7   Given the medical evidence of record discussed above, which gives weight
8   to plaintiff's complaints as being real rather than feigned, this sole
9   factor is not a sufficient basis for rejecting plaintiff's subjective
10  complaints and does not constitute substantial evidence for an adverse
11  credibility finding.

12

13  **II.   <u>Remand Is Required</u>.**

14

15      The decision whether to remand for further proceedings or to order
16  an immediate award of benefits is within the district court's
17  discretion.   <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).
18  Where no useful purpose would be served by further administrative
19  proceedings, or where the record has been fully developed, it is
20  appropriate to exercise this discretion to direct an immediate award of
21  benefits.   *Id.* at 1179 ("the decision of whether to remand for further
22  proceedings turns upon the likely utility of such proceedings").
23  However, where there are outstanding issues that must be resolved before
24  a determination of disability can be made, and it is not clear from the
25  record that the ALJ would be required to find the claimant disabled if
26  all the evidence were properly evaluated, remand is appropriate.   *Id.*
27  Here, remand is the appropriate remedy to allow the ALJ the opportunity
28  to remedy the above-mentioned deficiencies and errors.   *See, e.g.,*

18

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

Indeed, in view of plaintiff's diagnosis of RSD, the ALJ's failure to make detailed findings regarding plaintiff's pain medications may itself merit remand. Ferstl, 360 F. Supp. 2d at 1193-94 (remand appropriate when the ALJ's adverse credibility finding was undermined by the failure to make accurate and detailed findings regarding plaintiff's level of pain medications, the effectiveness of her medications, the side effects of her medications, and the frequency of her medical contacts). Thus, on remand, the ALJ should make specific determinations regarding the degree to which plaintiff's currently prescribed medication is effective in controlling the pain symptoms associated with RSD.

Further development of the record may also be appropriate to determine the existence of any other neurological or psychiatric issues that may be contributing to plaintiff's pain. SSR 03-2p states that:

A mental evaluation may be requested . . . to determine if any undiagnosed psychiatric disease is present that could potentially contribute to a reduced pain tolerance. It is important to recognize that such evaluations are not based on concern that RSDS/CRPS findings are imaginary or etiologically linked to psychiatric disease. The behavioral and cognitive effects of the medications used to treat pain need to be

19

1    thoroughly considered in the evaluation of this syndrome.

2

3    As provided in SSR 03-2p, a disability based on RSD "may not be

4    established on the basis of an individual's statement of symptoms

5    alone," however, RSD "can be established in the presence of persistent

6    complaint of pain that are typically out of proportion to the severity

7    of any documented precipitant and one or more of the following

8    clinically documented signs in the affected region at any time following

9    the documented precipitant: [s]welling; [a]utonomic instability - seen

10   as changes in skin color or texture, changes in sweating (decreased or

11   excessive sweating), skin temperature changes, or abnormal pilomotor

12   erection (gooseflesh); [a]bnormal hair or nail growth (growth can be

13   either too slow or too fast); [o]steoporosis; or [i]nvoluntary movements

14   of the affected region of the initial injury."  Thus, the ALJ may also

15   wish to develop the record further as to whether the objective medical

16   record supports a finding of any of these clinically documented signs.

17

18   On remand, the ALJ must consider the impact of all of plaintiff's

19   impairments, whether severe or not, on her ability to engage in and

20   sustain full-time work.  *See* <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th

21   Cir. 1993)(ALJ must consider "all factors" that might have a significant

22   impact on claimant's ability to work); *see also* 20 C.F.R. § 404.1545(e)

23   ("we will consider the limiting effects of all your impairment(s), even

24   those that are not severe").

25

26   After fully examining the evidence of record, and conducting

27   further development of the record, as necessary, the ALJ then must

28   provide clear and convincing reasons, if they exist, for discrediting

20

plaintiff's pain testimony.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 29, 2009

                                    /s/
                          MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE

21